IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CR. NO: 2:06-CR-200-WHA |
| ) | |
| HECTOR R. SILVA ) | |

**MOTION FOR LEAVE OF COURT TO FILE MOTION**

COMES NOW, the defendant Hector R. Silva, and moves this Honorable Court for leave to file motions outside the time set forth in the Court's Order on Arraignment, and in support of said motion states the following:

1. On September 1, 2006, this Court issued an Order on arraignment.

2. This Court set a September 22, 2006 deadline for pretrial motions filed pursuant to Rule 12(b), Federal Rules of Criminal Procedure.

3. On September 26, 2006, the undersigned counsel entered a notice of appearance for the defendant, Hector R. Silva.

4. The undersigned counsel was not an attorney of record and did not receive notice of the Court's Order on Arraignment until such time as the deadline to file Rule 12(b), F.R.Cr.P. had passed.

5. Attached to this motion as exhibits are defendant Hector R. Silva's motions to suppress.

6. The attached motions are made in good faith and are not for the purpose of delay.

7. In the interest of justice, the defendant requests this Court grant this motion for leave to file these motions.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

8. The undersigned affirms to this Court that he attempted to contact Assistant United States Attorney Christopher A. Snyder to discuss this Motion for leave to file but was unable to meaningfully discuss this with Mr. Snyder due to scheduling conflicts.

WHEREFORE, PREMISES CONSIDERED, the defendant prays this Honorable Court enter an order granting this motion for leave to file additional motions and set the attached motions for a hearing.

                    **/s/ Matthew P. Teague**
                    Matthew P. Teague (TEA010)
                    Attorney for Hector R. Silva

Of Counsel:

Matthew P. Teague, Esq.
138 Adams Avenue, Second Floor, Suite 3
Post Office Box 586
Montgomery, AL 36101
(334) 834-4500 (Telephone)
(334) 834-4500 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on November 6th, 2006, I electronically filed the foregoing with the Clerk of Court using the CMF/ECF system which will send notification of such filing to the following: Christopher A. Snyder, Jay Lewis and all other attorneys of record.

                    **/s/ Matthew P. Teague**
                    Matthew P. Teague, Esq.

**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| v.   ) | CR. NO: 2:06-CR-200-WHA |
| ) | |
| HECTOR R. SILVA   ) | |

**DEFENDANT HECTOR R. SILVA'S MOTION TO SUPPRESS**

COMES NOW the defendant, HECTOR R. SILVA, by and through his undersigned counsel, and moves this Honorable Court to suppress evidence pursuant to Rule 12(b), Federal Rules of Criminal Procedure and all other authorities listed herein, and as grounds therefore shows as follows:

I.  **ISSUES PRESENTED**

A.  Whether Alabama State Troopers violated defendant Hector R. Silva's fourth amendment rights by unreasonably prolonging a traffic stop without substantial justification?

B.  Whether Alabama Bureau of Investigation officers violated defendant Hector R. Siva's Fifth Amendment rights by continuing to question Mr. Silva after he requested counsel?

II.  **FACTS**[1]

    A.  **The initial traffic stop of Mr. Silva.**

1.  On July 13, 2006, Alabama State Trooper Will Barnes performed a traffic stop of a blue Ford F-150, driven by Mr. Silva, for speeding.

---

[1] The facts set forth herein were taken from reports issued by Alabama State Troopers and Alabama Bureau of Investigation agents and were produced to the defendant by the United States Attorney's office pursuant to a discovery request.

2.      During the course of the traffic stop, Trooper Barnes obtained Mr. Silva's driver's license and proof of insurance, patted Mr. Silva down for officer safety, questioned Mr. Silva regarding his destination, determined that Mr. Silva primarily spoke Spanish but understood some English, ascertained the city of his departure, questioned Mr. Silva regarding his employment, questioned Mr. Silva about his current home address, contacted the BLOC HIDTA Watch Center to run Mr. Silva's information, inquired into Mr. Silva's arrest record, asked questions about Mr. Silva's passenger (his sister in law and co-defendant Rosa E. Rincon), and sent a radio dispatch to Corporal Chris Brown for assistance.

3.      Trooper Barnes then received a dispatch from BLOC allegedly informing him Mr. Silva's address is a known address for drug smuggling, was informed Mr. Silva had prior arrests for DUI and an assault, and was informed Mr. Silva's commercial driver's license was not going to be renewed.

4.      Trooper Barnes observed that Mr. Silva appeared nervous and breathed heavily during questioning by Trooper Barnes.

5.      Trooper Barnes finished the warning citation, gave it Mr. Silva to sign and returned to Mr. Silva the signed, completed citation, his driver's license and the license of his passenger, Ms. Rincon.

6.      Although the issuing of the citation was complete and his license returned, Trooper Barnes restrained Mr. Silva in his police vehicle for continued questioning.

7.      Trooper Barnes articulated reason for continuing Mr. Silva's detention was Mr. Silva's inconsistent statements regarding his arrest record and his alleged nervousness during questioning.

8. After the citation was issued, Trooper Barnes questioned Mr. Silva regarding the presence of weapons, cocaine, heroin, marijuana, and methamphetamine in Mr. Silva's vehicle.

9. Mr. Silva responded no to each of Trooper Barnes questions.

10. After continued questioning by Trooper Barnes, all while being restrained in the police vehicle and without being informed of his right to leave the vehicle, Trooper Barnes asked Mr. Silva verbally for consent to search the vehicle in both Spanish and English, to which Mr. Silva did not respond.

11. Trooper Barnes then presented Mr. Silva with a consent to search form written in Spanish which Mr. Silva signed.

12. Pursuant to a search of the vehicle, Trooper Barnes and Corporal Brown discovered a quantity of substance believed to be cocaine.

**B.  The questioning of Mr. Silva by Alabama Bureau of Investigation Agents and State Troopers.**

13. On July 13, 2006, after the routine traffic stop described in paragraphs 1-12 above, Alabama State Trooper Will Barnes arrested Mr. Silva for an alleged violation of Title 21, United States Code Section 841(a)(1).

14. On July 13, 2006, Trooper Barnes transported Mr. Silva to the Alabama Bureau of Investigation's ("ABI") Investigative Operations Center ("IOC") in Montgomery, Alabama for further investigation.

15. At the IOC, ABI Agents Joe Herman and Angel Rodriquez advised Mr. Silva of his Fifth Amendment rights which Mr. Silva acknowledged.

16. After acknowledging his rights as read by the ABI agents, Mr. Silva requested legal counsel.

17. Despite Mr. Silva's request for counsel, Agent Rodriquez stated to Mr. Silva that if Mr. Silva wanted to "cooperate" with agents of the ABI "his window of opportunity was short."

18. ABI Agents then proceeded to question Mr. Silva further regarding his alleged violation of Title 21, United States Code Section 841(a)(1).

19. During questioning subsequent to Mr. Silva's request for counsel, Mr. Silva made incriminating statements to ABI agents.

### III. ARGUMENT/GROUNDS FOR SUPPRESSION

**A. Whether Alabama State Troopers violated defendant Hector R. Silva's fourth amendment rights by unreasonably prolonging a traffic stop without substantial justification?**

The Fourth Amendment to the United States Constitution protects the right of persons to be free from unreasonable searches and seizures. A seizure takes place "whenever a police officer accosts an individual and restrains his freedom to walk away." United States v. Perkins, 348 F.3d 965, 969 (11th Cir. 2003). Traffic stops qualify as seizures under the Fourth Amendment. Id.

Under a Fourth Amendment analysis, an officer's investigation of a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place" and must be of a limited duration. Terry v. Ohio, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1984). Ordinarily, when a citation or warning has been issued and all record checks have been completed and come back clean, the legitimate

investigative purpose of the traffic stop is fulfilled, and the driver's license and other documents should be returned.  United States v. Simms, 385 F.3d 1347,1354 (11th Cir. 2004)(citing United States v. Jones, 269 F.3d 919, 925 (8th Cir. 2001)( holding that the legitimate investigative purposes of the traffic stop were completed when State Trooper completed this initial investigation and determined that the driver was neither tired nor intoxicated, that his license and registration were valid, and that there were no outstanding warrants for his arrest).  The stop "may not last any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity." United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001).  The officer's reasonable suspicion cannot be just a mere hunch or based on circumstances which "describe a very large category of presumably innocent travelers." Reid v. Georgia, 448 U.S. 438, 441, 65 L. Ed. 2d 890, 100 S. Ct. 2752 (1980).

      The United States Supreme Court has noted that a traffic stop in and of itself is an unsettling show of authority that may create substantial anxiety and that nervousness is often related to the fact that a person is being momentarily detained by an authority figure with police power over him. United States v. Perkins, supra (quoting Delaware v. Prouse, 440 U.S. 648, 653, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979)).  The Eleventh Circuit requires more than the innocuous characteristics of nervousness or an out-of-state license for giving rise to reasonable suspicion.  Perkins, 348 F.3d at 971 (quoting United States v. Pruitt, 174 F.3d 1215, 1221 (11th Cir. 1999)(holding that the fact that the driver was Hispanic and had an out-of-state license plate was not enough to detain him beyond the issuance of the speeding ticket).  Further, the Eleventh Circuit stated, "Being Mexican, having few pieces of luggage, being visibly nervous or shaken during a confrontation

with a state trooper, or traveling on the interstate with Texas license plates (not yet a crime in Alabama) . . . fail to suggest that appellant . . . [was] engaged in any criminal activity other than speeding on the highway." Id. (quoting United States v. Tapia, 912 F.2d 1367, 1371 (11th Cir. 1990)).  A driver's inconsistent answers regarding his criminal record or previous arrests are not an articulate reason to prolong a search of a vehicle or the seizure of the driver as innocent travelers are reluctant to admit such arrests because it has the effect of casting unwarranted suspicion upon that person.  United States v. Jones, supra.

In the instant case, Trooper Barnes issued a warning citation to Mr. Silva, an immigrant day-laborer who does not speak fluent English and is not well educated, signaling an end to the traffic stop.  After the citation was issued, Trooper Barnes unreasonably detained Mr. Silva by keeping him in his police vehicle for further questioning in violation of the principles set forth above.  Trooper Barnes justified this continued questioning of Mr. Silva based on inconsistent statements regarding his arrest record and his supposed apparent nervousness, each of which has been determined to be an invalid reason to prolong a traffic stop because it is so common to so many drivers faced with the authority of a police officer.

Trooper Barnes unnecessarily prolonged his traffic stop of Mr. Silva based on a hunch without any justifiable suspicion of illegal activity in violation of the Fourth Amendment.  Therefore, this Court should suppress the evidence obtained during the search.

**B.    Whether Alabama Bureau of Investigation officers violated defendant Hector R. Siva's Fifth Amendment rights by continuing to question Mr. Silva after he requested counsel?**

The Fifth Amendment to the United States Constitution commands that no person "'shall be compelled in any criminal case to be a witness against himself.'" Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). It is this standard that guides criminal courts in determining whether an incriminating statement or confession made against oneself is voluntary. Miranda v. Arizona, supra.

The fifth amendment to the Constitution requires that when a person is advised of rights during custodial interrogation and the person requests a lawyer, all questioning must cease. United States v. Johnson, 812 F.2d 1329, 1331 (11th Cir. 1986)(citing Miranda v. Arizona, supra). "This is a 'rigid rule that an accused's request for an attorney is per se an invocation of his fifth amendment rights, requiring that all interrogation cease.'" Id. at 1331 (quoting United States v. Herrera, 711 F.2d 1546, 1557 (11th Cir. 1983))(in turn quoting Fare v. Michael C., 442 U.S. 707, 719, 99 S. Ct. 2560, 2569, 61 L. Ed. 2d 197 (1979)).

In United States v. Johnson, supra, the Eleventh Circuit Court of Appeals specifically addressed the issue raised by this motion, namely offering to help a defendant if he cooperates with arresting or investigation officers or agents. The Eleventh Circuit stated, "While stating to an accused in custody that the criminal justice system will be explained sounds innocent enough, those familiar with the criminal arena are well aware of the fact that such an 'explanation' is often designed to inform the accused that cooperation may be beneficial." Johnson at 1331. The Eleventh Circuit expressly

forbade the "good guy routine" and questions such as "Do you want to know what will happen to you?" and other statements made by law enforcement officers implying that law enforcement officers will "be good if the accused will be good" and unequivocally held that such statements are a violation of the Fifth Amendment which cannot be rectified using a harmless error analysis. Id. The Eleventh Circuit admonished officers and investigators to "remain close to the 'bright line': interrogation must cease when an accused in custody requests the presence of a lawyer before further interrogation.. Id. at 1331.

According to their own report, ABI agents Herman and/or Rodriguez continued to question Mr. Silva subsequent to Mr. Silva's request for an attorney. By so doing, Agents Herman and Rodriguez violated Mr. Silva's Fifth Amendment right to be a witness against himself in a criminal case. Regardless of ABI agents Herman's and Rodriguez's intention, be it an honest attempt to help Mr. Silva or a ruse to obtain an adverse statement, their actions were a clear violation of Mr. Silva's Fifth Amendment rights. Each and every statement made by Mr. Silva after his request for an attorney is a violation of the Fifth Amendment and must be suppressed by this Honorable Court.

## IV.  CONCLUSION

Under the exclusionary rule, evidence obtained in an encounter that is in violation of the Fourth Amendment, including the direct products of police misconduct and evidence derived from the illegal conduct, or "fruit of the poisonous tree," cannot be used in a criminal trial against the victim of the illegal search and seizure. United States v. Terzado-Madruga, 897 F.2d 1099, 1112 (11th Cir. 1990). Wherefore, premises considered, the defendant requests this Honorable Court set this matter for a hearing and

thereafter enter an Order suppressing the evidence obtained for the reasons set forth above.

**/s/ Matthew P. Teague**
Matthew P. Teague (TEA010)
Attorney for Hector R. Silva

Of Counsel:

Matthew P. Teague, Esq.
138 Adams Avenue, Second Floor, Suite 3
Post Office Box 586
Montgomery, AL 36101
(334) 834-4500 (Telephone)
(334) 834-4500 (Facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6th, 2006, I electronically filed the foregoing with the Clerk of Court using the CMF/ECF system which will send notification of such filing to the following: Christopher A. Snyder, Jay Lewis and all other attorneys of record.

**/s/ Matthew P. Teague**
Matthew P. Teague, Esq.
